**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ALBERT VAM, | : | |
| | : | Case No. 3:25-cv-263 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| UNIVERSITY OF DAYTON, | : | |
| | : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING MOTION TO DISMISS COMPLAINT (DOC. NO. 5)[1]**

Currently before the Court is Defendant the University of Dayton's ("UD") Motion to Dismiss Complaint (the "Motion") (Doc. No. 5). Plaintiff, Albert Vam ("Vam"), filed his Complaint with Jury Demand (the "Complaint") (Doc. No. 1), alleging race and national origin discrimination claims, under both state and federal law, and claims for Family and Medical Leave Act ("FMLA") interference and retaliation. (Doc. No. 1 at PageID 2–7.) Vam alleges that he was not selected for a promotion, was terminated, and was subject to discriminatory treatment due to his race and national origin. (*Id.*) Vam seeks, *inter alia*, to be reinstated and compensatory, punitive, and liquidated damages. (*Id.* at PageID 6–7.)

UD moves for dismissal of the Complaint, arguing that Vam has failed to state a claim upon which relief can be granted. (Doc. No. 5 at PageID 15.) UD argues that Vam's FMLA interference and retaliation claims are barred by the applicable statute of limitations and are insufficiently pled. (*Id.*) UD also argues that Vam's race and national origin discrimination claims under both state and federal law fail to allege sufficient facts to support a plausible claim. (*Id.*) Vam does not

---

[1] At the outset, the Court pauses give the utmost thanks it its Judicial Extern, Jonathan Huelsman for his assistance in preparing the instant decision. Jonathan's work in Chambers this semester has proven truly invaluable.

challenge the dismissal of his FMLA interference claim but opposes the dismissal of all other claims in the Complaint. (Doc. No. 9 at PageID 36.)

For the reasons stated herein, the Court **GRANTS** UD's Motion.

I.        **BACKGROUND**

As mentioned, this matter concerns claims of race and national origin discrimination, and FMLA interference and retaliation. Vam is allegedly an Arab male who was born in Egypt before immigrating to the United States in 1999. (Doc. No. 1 at PageID 2.)  Vam became a U.S. citizen in 2013 and began his employment with UD in 2014. (*Id.*)  Vam began as a Chemical Engineer in UD's Applied Combustion Group, but was transferred to the Aerospace Product Support Engineering Group ("APSE") in 2019. (*Id.*)  Once a part of APSE, Vam reported to David Koukol, the Group Leader. (*Id.*)  Vam alleges that he was the only non-Caucasian and/or non-American-born employee within APSE. (*Id.*)  Vam led energy-related research projects and was specifically successful in developing mobile fuel desulfurization during his time with UD. (*Id.*)  Vam alleges that he was referred to as a "top quality engineer and an even better entrepreneur," and that his desulfurization startup was "the most successful startup in UD's tech-based entrepreneurship program …." (*Id.* at PageID 3.)

Vam alleges that, despite these accolades, UD failed to promote him on multiple occasions to positions such as "Principal Investigator" or "Team Leader."  (*Id.*)  He also claims that UD improperly failed to select him for the Startup Coordinator position.  (*Id.*)  Vam alleges that he was treated differently from similarly situated Caucasian and/or American-born employees and that Koukol downplayed Vam's role in creating desulfurization technology, while only giving him a small role in presenting his own research. (*Id.*)  Additionally, Vam alleges that Koukol was openly hostile to him in both private and public and made several offensive comments. (*Id.*)

In February 2023, Vam alleges that his spouse had a panic attack, and he went on FMLA leave to care for her. (*Id.*) Then, three months later, on May 4, 2023, Vam was terminated, effective May 8, 2023, "allegedly due to position elimination" stemming from a lack of funding. (*Id.*) Vam alleges that he was the only employee who was impacted by the position elimination, and that an unidentified former colleague had told him that he was treated differently due to his race and national origin. (*Id.* at PageID 4.)

On November 21, 2025, UD filed its current Motion (Doc. No. 5). Vam filed his response in opposition to the Motion on December 11, 2025 (Doc. No. 9), and UD filed its reply brief in support of its Motion on December 22, 2025 (Doc. No 10). Accordingly, UD's Motion is ripe for review and discussion.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." For a complaint to survive a motion to dismiss under Rule 12(b)(6), a complaint must meet the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading requirements in Rule 8(a) require "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[l]egal conclusions, 'formulaic recitation[s]' of the claim's elements, and 'naked assertions[s]' of liability

are all insufficient" to state a claim for relief. *Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) (quoting *Twombly*, 550 U.S. at 557).  In considering a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff and take all of the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

### III.  ANALYSIS

#### 1. Vam's FMLA Interference and Retaliation Claims

Vam raises two claims in the Complaint concerning the FMLA: a claim for interference and a claim for retaliation. As an initial matter, Vam is not contesting the dismissal of his FMLA interference claim, and as such, the Court **GRANTS** UD's Motion in this respect.

The Court then considers Vam's FMLA retaliation claim on its own. UD argues that Vam's FMLA retaliation claim is untimely because the alleged violation took place more than two years before the filing of Vam's Complaint. (Doc. No. 5 at PageID 19–21.) Further, UD submits that Vam cannot take advantage of the FMLA's three-year statute of limitations for willful violations because the Complaint only includes conclusory allegations that UD acted willfully. (*Id.*)

Vam argues that the alleged facts in the Complaint give rise to the inference that UD intentionally or recklessly violated Vam's rights under the statute. (Doc. No. 9 at PageID 44.) Specifically, Vam claims that "Defendant's articulated basis for the termination decision has no apparent basis in fact. As such, it can be inferred that Defendant manufactured a false rationale because it knew Vam's termination was being effectuated in violation of his right not to be retaliated against for taking FMLA leave." (*Id.*)

Dismissal under Rule 12(b)(6) is proper if the statute of limitations bars a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . .").  Under

the FMLA, a claim must be filed no later than two years after the date of the alleged violation. 29 U.S.C. § 2617(c)(1).  However, if there is a willful violation of the FMLA, the statute of limitations is extended to three years. *Id.* at § 2617(c)(2).

A willful violation is one where "the employer intentionally or recklessly violated the FMLA." *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014). During the pleading stage, to evidence that the three-year limitations period applies, the plaintiff "must do more than make the conclusory assertion that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). The plaintiff must "plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Crugher*, 761 F.3d at 617 (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

Vam's Complaint does not meet this pleading standard. There are no factual allegations in the Complaint that UD acted intentionally or recklessly to violate Vam's FMLA rights. The only mention of willfulness in the Complaint is Vam's allegation that "[a]s a direct and proximate result of Defendant's *willful* conduct in violation of the FMLA, Plaintiff has suffered damages and is entitled to relief." (Doc. No. 1 at PageID 6) (emphasis added). Vam's Complaint lacks any other supporting factual allegations that evidence willful conduct or a mental state by UD.

Because Vam has failed to adequately plead any facts that evidence UD's willfulness, his FMLA retaliation claim must be considered under a two-year statute of limitations. Vam brought his claim on August 1, 2025, more than two years after the May 8, 2023, effective termination date. Therefore, the Court **GRANTS** UD's Motion in this respect.

### 2. Vam's National Origin and Race Discrimination Claims

Next, the Court turns to whether Vam has adequately stated a national origin and race discrimination claim. UD argues that Vam's Complaint fails to allege sufficient facts to make out

a national origin or race discrimination claim. (Doc. No. 5 at PageID 23, 25.) UD concedes that Vam is not required to prove a prima facie case of discrimination in his Complaint, but that "he was required to allege sufficient facts to support the plausible inference that UD discriminated against him because of his race or national origin." (Doc. No. 10 at PageID 50.) UD argues that Vam fails to "connect the dots between the alleged adverse actions and his race or national origin." (*Id.*)

Vam argues that his Complaint alleges sufficient factual material for these two claims, enabling the Court to draw reasonable inferences that UD is liable for the discrimination. (Doc. No. 9 at PageID 37.) Specifically, Vam argues that his Complaint provided sufficient factual material "to reasonably infer he was treated differently than his Caucasian and American born comparators." (*Id.* at PageID 39.)

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of his race or national origin. 42 U.S.C. § 2000e-2(a)(1). Ohio courts typically look to federal case law dealing with Title VII when dealing with claims under Ohio Rev. Code § 4112. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Com.*, 421 N.E.2d 128, 131 (Ohio 1981). Further, a national origin and race discrimination claim brought under Ohio Rev. Code § 4112 is evaluated under the same standard as Title VII claims. *Ndene v. Columbus Acad.*, No. 2:09-cv-892, 2011 U.S. Dist. LEXIS 21398, at *12 (S.D. Ohio Mar. 3, 2011).

### a. National Origin Discrimination Claims

Vam's Complaint is comprised of predominantly conclusory statements and contains little to no factual allegations to support a plausible inference of national origin discrimination. The

prima facie elements for a Title VII national origin discrimination claim require a plaintiff to show "(1) he is a member of a protected class; (2) he was terminated; (3) he was qualified for the position; and (4) he was replaced by a person outside of a protected class or was treated differently than a similarly situated, non-protected employee." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501 (6th Cir. 2007). Importantly, the prima facie elements are an evidentiary standard that applies to summary judgment and trial, not at the pleading stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). The Supreme Court has stated that it "never indicated that the requirements for establishing a prima facie case … also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511.

But this "does not excuse the requirement that [plaintiff] allege facts supporting a plausible inference of national origin discrimination to state a claim" under federal and Ohio law. *Nedlina v. Branch*, No. 1:24-cv-2071, 2025 U.S. Dist. LEXIS 152948, at *9 (N.D. Ohio Aug. 8, 2025) (quoting *Swierkiewicz*, 534 U.S. at 511). The Sixth Circuit has provided that "[a]lthough dismissal on the pleadings is often inappropriate in employment discrimination cases," if the allegations are "so conclusory that no plausible claim could be inferred," then dismissal is appropriate. *See Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021).  In making such a determination, the Court shall "not accept conclusions of law or unwarranted inferences of fact cast in [the] form of factual allegations." *Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013) (citing *Twombly*, 550 U.S. at 555). Plaintiff "bears the burden of alleging facts that plausibly suggest a causal connection between his protected status and the adverse employment action." *Mustafa v. Ford Motor Co.*, No. 24-1763, U.S. App. LEXIS 25001, *9 (6th Cir. Sept. 24, 2025) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

As stated, Vam fails to adequately plead facts that support a plausible inference of national origin discrimination. In the Complaint, Vam provides a mix of conclusory and non-conclusory allegations to support his claims. Of Vam's limited non-conclusory allegations, some do support individual elements of his national origin discrimination claim, being that he is a member of a protected class and that he was qualified for the position. (Doc. No. 1 at PageID 2.) However, these non-conclusory allegations fail to show that his national origin was the cause of the adverse employment actions taken against him.

Instead, Vam asks this Court to plausibly infer that he was treated differently from similarly situated colleagues because of the above-listed allegations. But these allegations, supported by no additional facts indicating that his national origin was the cause, are insufficient to state a claim under *Iqbal*.  The Sixth Circuit has explained that when a plaintiff can articulate "several specific events" in the lead up to a plaintiff's termination which "support a reasonable inference that race, religion, or national origin were *at least a motivating factor*" in his termination, dismissal is improper. *See Mustafa*, 2025 U.S. App. LEXIS 25001, at *11–12 (emphasis added).

Vam's Complaint does not provide comparable "specific events" which demonstrate that Vam's lack of promotion or termination was motivated by his national origin. Among Vam's non-conclusory allegations, he merely alleges that he was not promoted "on a number of occasions," he was successful in creating desulfurization technology, he was given a small role in presenting his research, his supervisor was hostile and made offensive comments, and that an unidentified former colleague informed Vam that "he was treated differently due to his race and national origin." (Doc. No. 1 at PageID 3–4.) These broad allegations are unlike the specific allegations required to state a claim*,* and Vam otherwise fails to allege specific facts that allow the court to plausibly infer his adverse employment action was due to his national origin.

There are many reasons why Vam may not have been selected for a promotion or given a smaller role in presenting research. Vam even alleges that UD's stated reason for his termination was an "alleged lack of funding," and Vam has alleged no facts, apart from conclusory hearsay, demonstrating that his allegedly non-protected colleagues were treated differently from him. (*Id.*) Therefore, because Vam has failed to sufficiently allege a national origin discrimination claim under either federal or Ohio law, the Court **GRANTS** UD's Motion in this respect.

### b.  Race Discrimination Claims

Moving to Vam's race discrimination claims, Vam's Complaint is comprised of predominantly conclusory statements and offers little to no factual allegations to support a plausible inference of race discrimination. A plaintiff must show the following elements to establish a race discrimination claim: "(1) he is a member of a protected class, (2) he was qualified for the job and performed it satisfactorily, (3) despite his qualifications and performances, he suffered an adverse employment action, and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated person outside his protected class." *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 45 (6th Cir. 2020) (citing *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015)).

Here, the analysis is very similar to the analysis above for Vam's national origin claim, and Vam's race discrimination claim fails for the same reasons. Vam utilizes the same allegations to support both claims in his Complaint. In an attempt to plead a racial discrimination claim, Vam alleges the same mix of conclusory statements without any additional facts and asks this Court to make an inference on those conclusions alone that he was fired due to his race. Of Vam's non-conclusory allegations, he alleges no factual details that demonstrate that he was discriminated

against because of his race. Therefore, because Vam has failed to sufficiently allege a race discrimination claim under federal or Ohio law, the Court **GRANTS** UD's Motion in this respect.

### 3. Leave to Amend

The Court last turns to Vam's request for leave to amend his Complaint. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." This language has been interpreted "as setting forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.'" *Chulsky v. Golden Corral Corp.*, No. 1:19-cv-875, 2022 U.S. Dist. LEXIS 151800, at *4 (S.D. Ohio Aug. 23, 2022) (quoting *Oleson v. United States*, 27 F.App'x 566, 569 (6th Cir. 2001)).  However, the Sixth Circuit has explained that "[i]n order to be granted leave to amend, a party must provide specific facts to support a claim." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Vam has provided no specific facts in his effort to be granted leave to amend the Complaint. Instead, Vam generally states that if the Court finds his Complaint deficient, he "requests that the Court allow him to move for leave to amend his Complaint to add more specific facts …." (doc. No. 9 at PageID 45.) Because Vam has identified only that he would provide a general claim of "specific facts," and has not identified what those facts are, his request for leave to amend is **DENIED**

### IV.   CONCLUSION

For all the reasons stated above, Vam's Complaint fails to state a claim, and UD's Motion to Dismiss Complaint (Doc. No. 5) is hereby **GRANTED** and the Complaint (Doc. No. 1) is hereby **DISMISSED**.  The Clerk is directed to **TERMINATE** this matter on the Court's docket.